UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OCTAVIUS JORDAN,

                Plaintiff,

v.                                              Case No. 14-cv-987-pp

SUPERINTENDENT MICHAEL HAFEMANN,
OFFICER REBECCA GOSS, KERRI MCKENZIE,
and MILWAUKEE COUNTY,

                Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 152)**

Plaintiff Octavius Jordan filed a complaint alleging that the defendants violated his constitutional rights when he was confined at the Milwaukee County House of Correction (HOC). Dkt. No. 1. The case is before the court on remand from the United States Court of Appeals for the Seventh Circuit on the plaintiff's claim that the defendants subjected him to cold temperatures, in violation of the Eighth Amendment. Dkt. No. 124. The defendants have filed a motion for summary judgment. Dkt. No. 152. The court will deny the motion.

**A.    PROCEDURAL BACKGROUND**

United States District Judge J.P. Stadtmueller screened the complaint under 28 U.S.C. §1915A and permitted the plaintiff to proceed on Eighth Amendment inadequate medical treatment and unconstitutional conditions of confinement (cold temperatures) claims. Dkt. No. 12 at 7. On December 29, 2014, the case was reassigned to this court.

On March 15, 2016, the court granted defendants Armor Correctional Health Service Inc., Floyd Elftman and Mai Xiong's motion for summary

1

judgment; granted defendant Dr. Thomas Gable's motion for summary judgment; and granted defendants Rebecca Goss, Michael Hafemann, Jose Hernandez, Kerri McKenzie and Milwaukee County House of Corrections' motion for summary judgment. Dkt. No. 102. The clerk entered judgment the next day. Dkt. No. 103.

The plaintiff appealed, dkt. no. 104, and on February 27, 2017, the Seventh Circuit vacated the district court's judgment and remanded the case for further proceedings on the claims against Goss, Hafemann, Hernandez, McKenzie and the county as to the temperatures to which the plaintiff was subjected. Dkt. No. 124 at 6.[1] The court of appeals stated in relevant part:

> As the district court correctly recognized, extreme cold may violate the Eighth and Fourteenth Amendments. See Haywood v. Hathaway, 842 F.3d 1026, 1030 (7th Cir. 2016); Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997); Walker v. Schult, 717 F.3d 119, 126 (2d Cir. 2013). Like the district court, we conclude that Jordan and his fellow prisoners' attestations of freezing temperatures during winters in the prison are enough to create a genuine dispute about the temperature of Jordan's unit.
>
> We part company with the district court on the element of deliberate indifference. A jury reasonably may believe that Goss, who worked in the unit, and the superintendent and assistant superintendents who oversaw the prison, had to have been aware of such extreme temperatures in Jordan's unit, especially given the attestations that Jordan and other inmates submitted numerous grievances about the cold. See Gray v. Hardy, 826 F.3d 1000, 1008 (7th Cir. 2016) (evidence that administrator "must have known" about risk of harm posed by conditions of confinement is sufficient for jury to find deliberate indifference); Haywood, 842 F.3d at 1030-31 (evidence that warden knew of extreme cold sufficient for jury to find deliberate indifference). And if the unit was as cold as Jordan represents, a jury may well believe that doing nothing other than allowing Jordan to use his blanket in his cell was "so plainly inappropriate [a response] as to permit the inference that the defendants intentionally or recklessly disregarded his needs."

---

[1] The court of appeals affirmed this court's judgment in favor of the remaining defendants related to the medical claims. Id.

> Haywood, 842 F.3d at 1031 (quoting Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008)) (reversing grant of summary judgment when prisoner attested to frigid conditions and guards failed to provide other means of warmth); see also Dixon, 114 F.3d at 643 (reversing grant of summary judgment when prisoner in freezing cell had only standard issue blanket and clothes).
>
> Moreover, Jordan's evidence that the prison was extremely cold for two consecutive winters despite frequent inmate grievances about the situation is enough for a jury reasonably to infer that the failure to provide adequate heat was not just inadvertence but "a conscious decision not to take action" on the county's part, so as to hold it liable for a custom of failing to provide adequate heat. Glisson v. Ind. Dep't of Corr., No. 15-1419, 849 F.3d 372, 381, 2017 WL 680350, at *7 (7th Cir. Feb. 21, 2017); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978) (evidence of custom suffices to hold governmental entity liable for constitutional torts). We note that as the district court correctly determined, the Milwaukee House of Correction "is not a legal entity separable from the county government which it serves and is therefore not subject to suit" under § 1983, see Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004), and so we substitute the county as defendant, see Ball v. City of Indianapolis, 760 F.3d 636, 643 (7th Cir. 2014).
>
> Finally, these defendants are not, as they argue, entitled to qualified immunity on this claim. It has long been settled that failing to provide adequate warmth to inmates violates their constitutional rights. See Dixon, 114 F.3d at 642.

Jordan v. Milwaukee Cty., 680 F. App'x 479, 482-83 (7th Cir. 2017).

On April 4, 2017, the court held a telephone status conference during which counsel for the defendants pointed out that the parties had not conducted discovery on the claim against the county because Judge Stadtmueller's screening order hadn't said whether the plaintiff could proceed on that claim. Dkt. No. 125 at 1. Counsel for defendants suggested that the court give the parties time to conduct limited discovery on an official capacity claim against Milwaukee County, and the plaintiff (unrepresented at that time) agreed. Id. In granting this request, the court explained that it would allow

3

discovery ONLY on the claim against Milwaukee County (the HOC) and that it did not reopen discovery on all issues. Id. The court then set a deadline for the completion of discovery and for filing a dispositive motion related only to the issue of the plaintiff's claim against Milwaukee County. Dkt. No. 182 at 11:54.58 (audio of April 4, 2017 status hearing).

On May 18, 2017, the court recruited a *pro bono* attorney for the plaintiff. Dkt. No. 132.

On July 9, 2018, the defendants filed their motion for summary judgment.[2] Dkt. No. 152. The defendants' motion is fully briefed and ready for resolution.

### B. THE MOTION FOR SUMMARY JUDGMENT

#### 1. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

---

[2] On August 16, 2018, the parties stipulated to the dismissal of defendant Hernandez. Dkt. No. 164. When it refers to "defendants," then, the court refers to Goss, Hafemann, McKenzie and the County.

4

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2.  Scope of Defendants' Motion

The defendants' post-remand motion for summary judgment argues for dismissal of *all* the plaintiff's claims. Dkt. No. 153. They contend that the plaintiff cannot establish that he was denied the minimal civilized measure of life's necessities or that the defendants were deliberately indifferent to any of his complaints. Dkt. No. 153 at 1. They also contend that the plaintiff cannot establish that any policy, practice or custom was the moving force behind any alleged constitutional violation. Id.

As explained above, at the April 4, 2017 telephone status conference, the court granted the defendants' request to conduct *limited* discovery as to the official capacity claim against Milwaukee County, and it set a dispositive motion deadline *as to that claim only*. The court *did not* allow the defendants the opportunity to file another summary judgment motion regarding the plaintiff's individual capacity claims. This court issued a forty-page order on the defendants' original motion for summary judgment, analyzing those individual capacity claims. The Seventh Circuit reviewed that decision, and concluded that the plaintiff had raised a dispute regarding the issue of whether

5

the defendants were deliberately indifferent to the allegedly frigid temperatures in the prison. In essence, the defendants now are asking this court to ignore the Seventh Circuit's conclusion, and reinstate the very ruling that the Seventh Circuit reversed. The court will not consider the defendants' summary judgment motion regarding the plaintiff's claims against Hafemann, Goss and McKenzie, including whether they are entitled to qualified immunity (a matter on which the Seventh Circuit also ruled).

As noted above, the Seventh Circuit also remanded the case as to the plaintiff's official capacity claim against Milwaukee County, but the parties had not had the opportunity to conduct discovery on that claim pre-appeal. Because the court gave the parties the opportunity to conduct limited discovery on *that* claim, and to file for summary judgment on *that* claim, the court will analyze the motion as it relates to the official capacity claim only.

      3.    <u>Facts</u>

The plaintiff was housed at the HOC from October 22, 2013 until January 13, 2014. Dkt. No. 167 at ¶1. He avers that the dorms at the HOC, particularly dorms D2 and H2, were extremely cold the entire time he was there. Dkt. No. 178 at ¶10. The plaintiff submitted the declaration of Raymond Johnson, who avers that he was housed at the HOC from August 2013 through March 2014 in dorms K6, M6, L6, P6, Q6, R6, B2, O2 and J2, and that the dorms were extremely cold, especially from October 2013 to February 2014. <u>Id.</u> The plaintiff submitted the declaration of Isiah Smith who avers that he was incarcerated at the HOC from July to October or November 2010, in dorms K2 and L2, and that it was extremely cold in the dorms. <u>Id.</u> The plaintiff submitted the affidavit of Terrell Essex, who avers that he was incarcerated at the HOC from September or October 2012 to June 2013, and from February to

6

November 2016, in dorms E2, F2, K2 and A2, and that it was extremely cold in the dorms. Id.

Defendant Superintendent Michael Hafemann was appointed by the County Executive to oversee the HOC beginning in May 2013 and has served in that capacity since that time. Dkt. No. 167 at ¶31. Hafemann's duties include development of the budget; establishing policy; appearing before and reporting to the County Board; and overseeing the assistant superintendents, the maintenance superintendent and the captain of internal affairs and professional standards. Id. at ¶97.

Defendant Kerri McKenzie has served as assistant superintendent at the HOC since May 2013. Id. at ¶32. She is the operations assistant superintendent. Id. at ¶104. As part of her duties, McKenzie is responsible for the safety and security of the inmates, officers, and civilian employees and her duties focus on the buildings, operations and staff. Id.

At the time of the plaintiff's incarceration, some of the dorms in the North Building had been outfitted with computerized controls and sensors that recorded dorm temperatures at fifteen-minute intervals and to the hundred thousandth of a degree, Fahrenheit. Id. at ¶145. At the time of the plaintiff's incarceration, dorm D-2 had not yet been outfitted with a computerized sensor. Id.

The parties dispute the reason for a project begun in 2012 to seal the over 400 windows in the North Building with glass block. Dkt. No. 167 at ¶33. They also dispute whether the plaintiff's cell in D-2 had been sealed over with glass block in May 2013. Id. at ¶34. Before the windows were sealed over, it was significantly colder near the windows because they were seventy years old and would often slightly open to let in drafts of cold air. Dkt. No. 178 at ¶23.

7

During 2013 and 2014 while the plaintiff was incarcerated at the HOC, the North Building was heated with steam heat. Dkt. No. 167 at ¶36. While the plaintiff was incarcerated at the HOC, dorm D2 was heated by six to eight radiators on each side of the dorm and the radiators were fed with steam heat supplied by three boilers. Id. at ¶37. During the plaintiff's incarceration at the HOC, each dorm and dayroom in the North Building was equipped with a thermostat covered by a metal cage with slots so that the thermostat could read the ambient air temperature of the dorm. Id. at ¶41.

According to the defendants, it is the policy and practice of Milwaukee County to respond to HOC work orders within twenty-four hours by having maintenance staff promptly conduct an on-site investigation of any possible causes for temperature fluctuation. Id. at ¶44. The plaintiff disputes this and states that James McNall testified that he generally completed his work "within a day or two." Id. The plaintiff also states that a work order was placed on January 1, 2014 for cold temperatures on dorm D2 and that McNall did not come in to complete maintenance on the heat system until January 2, 2014. Id. The plaintiff further states that the evidence shows that certain repairs that impacted the heating system took much longer to repair, such as a water leak in a heater on dorm D2 that took over two months to complete after the work order was generated on January 24, 2014. Id.

The HOC employs a full-time steam fitter and contracts with outside entities, which are referred to as time and material contractors, to assist with and perform tasks related to steam fitting, heating and ventilation. Id. at ¶47. In 2013 and 2014, the HOC had a contract with Grunau Company to assist with any sort of steam fitting work that might be needed, and to have extra staff at the ready during winter months. Id. at ¶48.

According to the defendants, Shawn Sullivan has been the maintenance superintendent at the HOC since 1999. Id. at ¶51. He explained the thermostats in detail, how they are adjusted and how inmates often vandalized them using a technique called "dashing" to control dorm temperatures. Id. If an enterprising inmate felt cold, he would "dash" the thermostat by throwing water on it and causing it to falsely read a colder ambient temperature. Id. This, in turn, caused the thermostat to signal that additional hot air needed to be pumped into the dorm. Id. Other than the maintenance superintendent, the employee primarily responsible for heating issues was McNall, who was at first employed as a contract steam fitter through Grunau Company and who was exclusively on site at the HOC full time from 2008-2017. Id. at ¶52. Later, he became employed directly by Milwaukee County in the same capacity. Id. McNall replaced thermostats "a lot" due to water damage from dashing, but otherwise the thermostats rarely failed for other reasons. Id. at ¶53.

According to the defendants, it is the policy and practice of Milwaukee County to maintain HOC dorm temperatures at a "sweet spot" of between 71-72 degrees because it "[keeps] everybody happy, including the staff." Id. at ¶58. The HOC maintenance staff strives to keep the dorm temperatures steady in the 71-to-72-degree range. Id. at ¶59. According to the defendants, once defendant Hafemann took over as superintendent in 2013, HOC maintenance staff was called in if the temperature dropped below 71 degrees. Id. at ¶61. The defendants dispute this fact to the extent it suggests that maintenance was always called in for reports of cold cell temperatures. Id.

The HOC had a grievance policy and practice in place that permitted inmates to file grievances about a wide variety of issues, including about the temperature in a dorm or dayroom. Id. at ¶84. During the relevant period, an

9

inmate wishing to file a grievance could ask the dorm officer for a grievance form. Id. at ¶86. The inmate could fill out the form and return it to the dorm officer, or the inmate could place the completed form in a locked box located in each dorm. Id.

The plaintiff wrote inmate requests related to the cold to defendants Hafemann, McKenzie and Hernandez. Dkt. No. 178 at ¶8. He did not receive any response to these inmate requests. Id. at ¶9. Various inmates, including the plaintiff, often verbally complained to correctional officers at the HOC about the cold temperatures in the dorm. Id. at ¶42. Various inmates, including the plaintiff, filed written grievances related to the cold temperatures. Id. at ¶43.

While incarcerated at the HOC, Jordan was diagnosed with strep throat and suffered from alleged asthma flare-ups. He believes that the temperatures in the dorms in which he was housed either caused and/or exacerbated his illnesses. Dkt. No. 167 at ¶149.

    4.    Discussion

The defendants contend that the plaintiff cannot establish that any policy, practice or custom caused his alleged injuries.³ Dkt. No. 153 at 27. The defendants argue that assuming that the temperatures were unconstitutionally cold, any drop in temperatures below an acceptable level was not the result of any policy, custom or practice of the HOC or its administrators. Dkt. No. 153 at 27-28. They state that, "[i]nstead, it would have been the result of the realities of a 65-year old building that HOC staff made every effort to maintain and

---

³ The defendants also argue that the plaintiff cannot establish any constitutional violation upon which a Monell claim can be based. Id. As explained earlier, the court of appeals already has determined that a factual issue exists as to whether the defendants violated the plaintiff's constitutional rights.

10

improve within their budgetary abilities." Id. at 28. According to the defendants, the plaintiff cannot show that defendant Hafemann had an express policy that violated the plaintiff's rights. Id. The defendants contend that "there is no evidence that the HOC's policy of attempting to keep temperatures at 71-72 degrees is unconstitutional," "[t]here is no evidence that the HOC's express policy of responding to temperature complaints within twenty-four to forty-eight hours is unconstitutional or that their express policy of moving inmates to different dorms if needed is unconstitutional," and "there is no evidence that the HOC's express policy of requiring inmates to use their blankets while on their bunks is unconstitutional." Id.

The plaintiff responds that he has shown that there is a policy, practice or custom at the HOC that caused his injuries. Dkt. No. 169 at 18. He points to the court of appeals' remand order, which found that the plaintiff's evidence, consisting of his own declaration and three other inmates' declarations attesting to freezing temperatures for two winters despite inmate grievances, was "enough for a jury reasonably to infer that the failure to provide adequate heat was not just inadvertence but 'a conscious decision not to take action' on the county's part, so as to hold it liable for a custom of failing to provide adequate heat." Dkt. No. 169 at 18 (quoting Jordan v. Milwaukee Cty., 680 Fed. App'x. 479, 483 (7th Cir. 2017)). The plaintiff states that, in addition to the three affidavits filed alongside the plaintiff's in his original response to the defendants' motion for summary judgment, he has presented additional declarations (including that of Raymond T. Johnson, who had previously filed an affidavit) of other inmates attesting to the extremely cold temperatures in the dorms between 2010 and 2016 and the inmate complaints each filed and witnessed. Dkt. No. 169 at 18. The plaintiff also cites to the lack of response to

inmate complaints, the defendants' alleged knowledge that the windows allowed cold air into the dorms and their knowledge that thermostats regularly failed. Id. at 19.

To prevail on his municipal liability claim, the plaintiff must present evidence that a county policy, practice or custom caused a constitutional violation. Chatham v. Davis, 839 F.3d 679, 685 (7th Cir. 2016) (citing Whiting v. Wexford Health Sources, Inc., 839 F.3d 658 664 (7th Cir. 2016); Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 293, 303 (7th Cir. 2009) (discussing municipal liability for Eighth Amendment violations)); see also Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978).

To establish municipal liability under Monell, the critical question

> is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents. There are several ways in which a plaintiff might prove this essential element. First, she might show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Humphries, 562 U.S. at 35, 131 S.Ct. 447 (quoting Monell, 436 U.S. at 690, 98 S.Ct. 2018). Second, she might prove that the "constitutional deprivation[ ] [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690–91, 98 S.Ct. 2018. Third, the plaintiff might be able to show that a government's policy or custom is "made ... by those whose edicts or acts may fairly be said to represent official policy." Id. at 694, 98 S.Ct. 2018. As we put the point in one case, "[a] person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government...." Vodak v. City of Chicago, 639 F.3d 738, 747 (7th Cir. 2011). Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

Glisson v. Ind. Dep't of Corr., 849 F.3d 472, 379 (7th Cir. 2017).

The plaintiff has submitted evidence from several inmates, including himself, which raises a question as to whether the county (through the HOC staff) had a practice of failing to keep the temperatures in certain areas at a habitable level. While the HOC appears to have had a policy requiring the temperature to be kept at a certain level, the plaintiff's evidence raises questions about whether there was a practice of ignoring, or failing to adhere to, that policy. The evidence also raises questions about whether staff had a practice of ignoring inmate grievances related to the temperature. The court will deny the defendants' motion for summary judgment as to the plaintiff's official capacity claim, and will allow him to proceed on a <u>Monell</u> claim against the county.

### C. NEXT STEPS

The court's staff will calendar a scheduling conference, to discuss final pretrial and trial dates. The parties may appear by phone at this conference, if they so choose.

### D. CONCLUSION

The court **DENIES** the defendants' motion for summary judgment. Dkt. No. 152.

Dated in Milwaukee, Wisconsin this 20th day of September, 2019.

                                      **BY THE COURT:**

                                      _____
                                      **HON. PAMELA PEPPER
                                      United States District Judge**